Dear Senator Munson:
You have asked for our opinion about the application of certain limits on liability contained in the Lead Poisoning Prevention Program Act, Chapter 114 of the Laws of Maryland 1994. Among its key provisions, the Act grants to property owners who take certain risk reduction measures a limit on their liability to tenants for lead poisoning. Your questions, which take the form of five specific factual "scenarios," focus on situations in which tenants had differing levels of lead in their blood in tests done before and after the effective date of the Act. Our analysis of these specific scenarios is set forth in Part II of this opinion.
In general, the answers to your questions depend on whether the tests done after the Act's effective date reflect exposure to lead that occurred before the effective date or after. In our view, all exposure after the Act's effective date is subject to the Act. Thus, a person who has an elevated blood level (hereafter "EBL") of 25 micrograms per deciliter of blood (hereafter " g/dl") after the effective date, or 20 g/dl five years after the effective date, will be covered by the provisions of the Act, including its liability limits, if the EBL is due to exposure after the effective date. A person who has an EBL below those amounts, attributable to exposure after the effective date, will have no cause of action. If an EBL reflects exposure prior to the effective date, however, the plaintiff will not be subject to the Act unless the first test that shows a level of 25 g/dl or more is done after the effective date, or the plaintiff elects to give notice under the Act and accept a property owner's qualified offer.
 I Background
The Lead Poisoning Prevention Program Act was designed to achieve a balance among three policy goals: meeting the need for housing that is safe from lead hazards, maintaining an affordable stock of rental housing, and providing a compensation mechanism for those who are exposed to lead. The Act seeks to achieve this balance by rewarding property owners who take certain steps to reduce lead paint risk in their property with a limitation on their liability to those who nevertheless are exposed to harmful levels of lead. At the same time, the Act makes it easier for injured persons to receive some measure of compensation by eliminating their need, in those cases where a qualified offer is made, to meet the difficult burdens of proof imposed in common law actions and by creating presumptions in their favor in cases where the property owner has not complied with the Act.
The Lead Poisoning Prevention Program Act is codified at Title 6, Subtitle 8 of the Environment ("EN") Article, Maryland Code. It requires property owners to register rental properties built before 1950 and to comply with certain standards designed to reduce the risk of exposure to lead when the property changes hands, upon notification of certain defects, or in any event by specified dates. Property owners are also required to notify their tenants of their rights under the Act.
The Act places significant limitations on the right of plaintiffs affected by exposure to lead to file a civil suit for damages. A person may not file suit for damages or injury to a person at risk caused by the ingestion of lead paint unless the property owner is first given notice that the person has a EBL that meets the limits set in the law and an opportunity to make a qualified offer. EN § 6-828. A qualified offer must cover relocation expenses and reasonable expenses for medically necessary treatments. EN § 6-839(a). Liability for these expenses is capped, however, at $9,500 for relocation expenses and $7,500 for medical treatment. EN § 6-840(a). Acceptance of the qualified offer releases the property owner from all other liability. EN § 6-835. Rejection also releases the property owner from liability if the property owner had complied with the Act by registering the property, notifying tenants, and performing the required risk reduction steps. EN § 6-836. If the owner is not in compliance and the qualified offer is not accepted, the plaintiff may file suit; indeed, the failure to comply creates a rebuttable presumption of negligence. EN § 6-838.
The Act had a stated effective date of October 1, 1994, and numerous deadlines in the Act were based on that date. The regulations to implement the Act were not in place, however, until February 24, 1996. Because most of the Act could not be given effect without the regulations, this office has taken the position that the actual effective date is February 24, 1996, and that the other dates in the Act (with the exception of those relating to registration, annual fees, and insurance) should be moved back accordingly. See letter from Attorney General J. Joseph Curran, Jr. to Senator Walter M. Baker (February 14, 1996). House Bill 1231 and Senate Bill 669, which have passed both Houses of the Legislature, would amend the Act to reflect this advice. For purposes of this opinion, all references to specific dates will be to the dates as altered by the regulatory delay.
During debate on the Act, concern was expressed about the extent to which the limitations on liability would affect cases that arose from exposure to lead prior to the effective date of the Act. The result of this debate was an uncodified section of the Act, Section 7, which provides as follows:
 [T]his Act shall be construed only prospectively and may not be applied or interpreted to have any effect on or application to any event or condition occurring before the effective date of this Act, except for:
 (1) The case of a person at risk with an elevated blood lead of 25 micrograms per deciliter or more first documented by a test performed on or after [February 24, 1996], or with an elevated blood lead of 20 micrograms per deciliter or more first documented by a test performed on or after [February 24, 2001], if the elevated blood lead was caused by the ingestion of lead prior to [February 24, 1996]; or
 (2) The acceptance of a qualified offer under § 6-835 of the Environment Article, as enacted by this Act, if the alleged injury or loss caused by the ingestion of lead by the person at risk in the affected property occurred before [February 24, 1996].[1]
This provision indicates that the Act ordinarily has no retroactive effect and that cases based on exposure to lead that occurred prior to the effective date are not subject to the requirement that the person at risk give notice and provide the property owner with an opportunity to make a qualified offer before filing suit. There are two exceptions to this general rule against retroactivity: one for exposures that result in an EBL of 25 g/dl or greater first documented after the effective date of the Act; and one for exposures prior to the effective date of the Act, if the person at risk elects to accept a qualified offer made by the property owner.
Section 7 also affirms that the Act, like legislation generally, has full prospective effect. Thus, it applies to any exposure that occurs after the effective date. Since exposure to lead is a process, rather than a single event, application of this principle may not be easy in practice. In our view, however, Section 7 requires that exposure over time be divided for purposes of liability. That is, where an exposure has continued from a time prior to the effective date to a time after the effective date, exposure prior to the effective date gives rise to the right to file a civil suit, assuming that the exposure level of 25 g/dl or more is not first documented after the effective date, and exposure after the effective date is subject to the provisions of the Act that limit liability.
 II Application of Act's Effective Date Provisions to Specific Factual Scenarios
Your specific questions relate to the application of the Act to each of five different scenarios. Your request reflects the assumption that, in each scenario, the potential plaintiff resided in an affected property prior to the effective date of the law and continued to reside there after the effective date. Moreover, your questions assume that the property owner is in compliance with the law in all relevant respects.
A. Scenario One
A person at risk obtains the results of a first blood lead test prior to the Act's effective date. The test shows an EBL of 15 g/dl. After the effective date, the same person is tested again and is found to have an EBL of 26 g/dl, a result reported in writing to the property owner.
Since this person has an EBL of 25 g/dl first documented after February 24, 1996, the person would be subject to the Act under the first exception in Section 7 to what is otherwise the generally prospective effect of the Act. Thus, under EN § 6-828, the person could not bring suit until the property owner had been given notice and an opportunity to make a qualified offer; a qualified offer, if made, would cut off the ability of the affected person to file suit. Because the Act has retroactive effect in this instance, this answer is the same whether the test after the Act's effective date reflects exposure prior to or after the effective date.
B. Scenario Two
A person at risk obtains the results of a first blood lead test prior to the Act's effective date. The test shows an EBL of 25 g/dl. After the effective date, the same person is tested again and found to have an EBL of 26 g/dl, a result reported in writing to the property owner.
If testing after the Act's effective date reflects lead poisoning that occurred prior to the effective date of the Act, then paragraph (1) of Section 7 would bar application of the Act, because an EBL above the threshold was not "first documented by a test performed" on or after February 24, 1996. Paragraph (2) of that section, however, would make the Act applicable if the property owner makes a qualified offer that is accepted by the person at risk.
If testing after the Act's effective date reflects exposure after that date, a different question is raised. EN § 6-828(b) by its terms refers to injuries caused by the ingestion of lead that is "first documented by test for EBL of 25 g/dl or more performed on or after [February 24, 1996]. . . ." If ingestion of lead began prior to the effective date and continued after the effective date, as seems likely if the person at risk resided in the same property for the entire time, one possible reading of this language would be to bar application of the statute to that person at risk for any part of the tenancy if there was a test result above the statutory amounts prior to the effective date. In our view, however, the Act was intended to cover all exposure to lead that occurs after the effective date. To read it otherwise would create a gap in the protections offered property owners who comply with the Act, leaving them open to suit by some tenants for exposure during times that the property owner was in compliance. This extra liability could theoretically extend to exposures that occur almost six years after the effective date of the Act.
Thus, in our view, it is a covered exposure — that is, one occurring after the effective date of the Act — that must be "first documented" after the effective date, and the existence of pre-Act documentation does not interfere with the application of the Act to exposures that occur after the effective date. Paragraph (1) of Section 7 was not intended to exclude exposure after the effective date when exposure started prior to the effective date and continued after it.[2] So, for example, a person who tested above 25 g/dl prior to the effective date of the law, and again tested above that level after the effective date, could bring suit only for the exposure that occurred prior to the effective date. The test after the effective date would be admissible in that suit only to the extent that it would be relevant to the issue of exposure prior to the effective date.
C. Scenario Three
A person at risk obtains the results of a first blood test prior to the Act's effective date. The test shows an EBL of 15 g/dl. After the effective date, the same person is tested again and is found to have an EBL of 19 g/dl, a result reported in writing to the property owner.
Under Section 7, the Act has no retroactive effect with respect to this person at risk, because there has been no EBL of 25 g/dl or greater first documented after the effective date of the Act. Thus, to the extent that the two tests reflect exposure prior to the effective date, the person at risk would be free to file suit without giving the property owner an opportunity to make a qualified offer. Paragraph (2) of Section 7, however, would permit the person at risk to accept a qualified offer with respect to pre-Act exposure, and that acceptance would bar any suit based on that exposure.
To the extent that exposure after the effective date is involved, the person at risk would have neither a cause of action nor the right to receive a qualified offer. Protection from liability under the Act extends to "all potential bases of liability for alleged injury or loss to a person caused by the ingestion of lead by a person at risk in an affected property." EN § 6-827. The provision barring suit unless the property owner has been given notice and an opportunity to make a qualified offer, as introduced, referred to "an action. . . for damages arising from alleged injury or loss to a child caused by the child's ingestion of lead." House Bill 760 of 1994, First Reader Version. While this provision was subsequently amended to add language referring to the EBL necessary to give rise to a qualified offer, nothing in the legislative history indicates that the intent of this change was to allow civil suits to be filed by persons with an EBL below the specified numbers. In fact, inclusion of the threshold amounts in the introductory language of EN § 6-828(b) was originally suggested by the Property Owners Association of Greater Baltimore and was part of an amendment intended to "make clear that . . . lawsuits brought by any person for loss or injury based upon EBLs under 25 g/dl in a person at risk will not be permitted." Letter from the Property Owners Association of Greater Baltimore to Delegate Ronald A. Guns (March 22, 1994). Moreover, a reading that would allow a civil suit for the full amount of damages available at common law by a person with an EBL of 24 g/dl, while barring such a suit by a person with an EBL of 25 g/dl, would be contrary to the provisions of EN § 6-827 and would turn the lowering of the threshold to 20 g/dl after the Act has been effect for five years into an additional restriction on recovery by persons at risk rather than a liberalization intended to reflect the increased safety of rental units as the required work is done. Thus, it is our view that the Act forecloses any cause of action by a person whose exposure to lead after the effective date of the Act does not meet the statutory thresholds. That person could file suit for exposure that occurred prior to the effective date.
D. Scenario Four
A person at risk first obtains the results of a blood test after the Act's effective date. The test shows an EBL of 19 g/dl, a result reported in writing to the property owner.
A test done shortly after the effective date of the Act might reflect exposure prior to the effective date of the Act. The Act itself recognizes this fact and creates a presumption that an EBL documented in the first thirty days of residency will be presumed to have occurred prior to the residency. EN § 6-830. This prior exposure could be the basis of a civil suit. Otherwise, for the reasons discussed in Part II C above, a person who had an EBL of 19 g/dl after the effective date of the Act would have no cause of action at all.
E. Scenario Five
A person at risk obtains the results of a first blood test prior to the effective date of the law. The test shows an EBL of 26 g/dl. After the effective date, the same person is tested again. The test shows an EBL of 15 g/dl.
This person is not subject to the retroactivity provisions of Section 7, paragraph (1), because the EBL over 25 g/dl was documented prior to the effective date. The person could, however, elect to accept a qualified offer under paragraph (2). If the person did not elect to accept a qualified offer, he or she could file a civil action with respect to exposure that occurred prior to the effective date. The person would have no cause of action with respect to exposure after the effective date, for the reasons discussed above, but could use the test result after the effective date if it is relevant to exposure prior to the effective date.
Very truly yours,
 J. Joseph Curran, Jr. Attorney General
 Kathryn M. Rowe Assistant Attorney General
__________________________ Jack Schwartz Chief Counsel Opinions and Advice
[1] The dates inserted in brackets reflect those contained in House Bill 1231 and Senate Bill 669.
[2] The effective date appears in paragraph (1) in order to make clear the period during which the threshold EBL is 25 g/dl before it drops to 20 g/dl.
 *Page 189